IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS,
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

APR 2 0 2004

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| AM-CAN TRANSPORT SERVICE, INCORPORATED, | §<br>§<br>§ | |
| Plaintiff, | §<br>§ | |
| v. | §<br>§ | Civil Action No. B-04-057 |
| KEMET CORPORATION; and ALLIANZ GLOBAL RISKS US INSURANCE COMPANY, | §<br>§<br>§<br>§ | |
| Defendants. | §<br>§ | |

## APPENDIX IN SUPPORT OF DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) OR, ALTERNATIVELY, MOTION TO TRANSFER VENUE

Defendants Kemet Electronics Corporation, improperly named as "Kemet Corporation," and Allianz Global Risks US Insurance Company, formerly known as Allianz Insurance Company, file this Appendix in Support of Defendants' Brief in Support of Motion to Dismiss Pursuant to Rule 12(b)(6) or, Alternatively, Motion to Transfer Venue which is filed contemporaneously herewith. The documents attached hereto are incorporated by reference for all purposes:

| EXHIBIT | DESCRIPTION | PAGE NOS. |
|---|---|---|
| A | Defendants' February 4, 2004 Demand Letter to Am-Can Transport Service, Inc. | Appendix P. 01 – Appendix P. 02 |
| B | Affidavit of Brent W. Bull | Appendix P. 03 – Appendix P. 09 |
| C | Defendants' February 17, 2004 Letter to Am-Can Transport Service, Inc. | Appendix P. 10 |
| D | Defendants' March 31, 2004 Letter to Am-Can Transport Service, Inc. | Appendix P. 11 |
| E | *PAJ, Inc. v. Yurman Design, Inc.* 1999 WL 68651 (N.D. Tex. Feb. 9, 1999) | Appendix P. 12 – Appendix P. 15 |

| F | Plaintiff Kemet's Original Complaint in the District of South Carolina, Greenville Division | Appendix P. 16 – Appendix P. 19 |
| G | Affidavit of Michael Boone | Appendix P. 20 – Appendix P. 21 |
| H | Am-Can's Original Complaint | Appendix P. 22 – Appendix P. 24 |

Respectfully submitted,

By: _Brett Wallingford_

Brett A. Wallingford
Attorney in Charge
State Bar No. 00797618
S.D. No. 28071
**ZELLE, HOFMANN, VOELBEL, MASON & GETTE, L.L.P.**
1201 Main Street, Suite 3000
Dallas, Texas 75202-3975
Telephone: 214-742-3000
Telecopier: 214-760-8994

**OF COUNSEL:**

Kerry K. Brown
State Bar No. 03149880
S.D. No. 13892

**ZELLE, HOFMANN, VOELBEL, MASON & GETTE, L.L.P.**
1201 Main Street, Suite 3000
Dallas, Texas 75202-3975
Telephone: 214-742-3000
Telecopier: 214-760-8994

**ATTORNEYS FOR DEFENDANTS KEMET
ELECTRONICS CORPORATION AND ALLIANZ
GLOBAL RISKS US INSURANCE COMPANY**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing has been forwarded via Certified Mail, Return Receipt Requested, on this 19th day of April, 2004 addressed as follows:

Charles E. Sweetman
**SWEETMAN, SKAGGS & LAWLER, LLP**
855 E. Harrison
Brownsville, TX 75820

Brett A. Wallingford

# ZELLE, HOFMANN, VOELBEL, MASON & GETTE

### REGISTERED LIMITED LIABILITY PARTNERSHIP

| | | |
|---|---|---|
| BOSTON | 1201 MAIN STREET | Kerry K. Brown |
| DALLAS | SUITE 3000 | kbrown@zelle.com |
| LOS ANGELES | DALLAS, TEXAS 75202 | (214) 749-4213 |
| MINNEAPOLIS | 214-742-3000 TELEPHONE | |
| SAN FRANCISCO | 214-760-8994 FACSIMILE | |
| WASHINGTON, D.C. | www.zelle.com | |
| BEIJING* | | |
| SHANGHAI* | | |
| *In association with ZY & Partners | | |

February 4, 2004

Charles Sweetman
SWEETMAN, SKAGGS &
   LAWLER, L.L.P.
855 East Harrison
Brownsville, TX  78520

**VIA TELECOPY (956) 541-2117 AND
FIRST CLASS U.S. REGULAR MAIL**

Alan W. Rauch
Senior Claims Examiner
RLI TRANSPORTATION
2970 Clairmont Road
Suite 1000
Atlanta, GA  30329

**VIA TELECOPY (404) 315-6558 AND
FIRST CLASS U.S. REGULAR MAIL**

      Re:    Am-Can Loss on April 11, 2003
             RLI Claim No.:  00156857
             Our File No.:  2-406-0059

Gentlemen:

      We represent Kemet Corporation ("Kemet") and Kemet's subrogated insurance carrier, Allianz Global Risks US Insurance Company ("Allianz Global Risks"), in connection with an accident that occurred outside of Kingsville, Texas on April 11, 2003.  Please direct all future communications regarding this matter to this law firm.

## THE ACCIDENT

      Am-Can hauls capacitors and other products for Kemet by truck from South Carolina to Kemet's facility in Brownsville, Texas.  During a rainstorm on April 11, 2003, an Am-Can truck driven by James W. Key lost control just outside of Kingsville, Texas.  The Texas Department of Public Safety ("Texas DPS") cited Am-Can's driver for driving at an unsafe speed.  (See attached Exhibit "A").  The capacitors and other cargo belonging to Kemet were ejected from the trailer and scattered across the highway and median.  Kemet salvaged what it could.  The rest had to be scrapped.  Damages total $1,034,582.13.

APPENDIX P. 1

February 4, 2004
Page 2

———————————————

## LIABILITY AND DAMAGES

Am-Can took possession of Kemet's cargo (see attached "Exhibit B") in Simpsonville, South Carolina on April 10, 2003, and had a duty to deliver the cargo in good condition to Brownsville, Texas. Due to the negligence of Am-Can's driver, Kemet's property was damaged. The $1,034,582.13 damage figure represents the damages after applying all credits for the cargo Kemet was able to salvage. (See attached Exhibit "C").

## CONCLUSION AND DEMAND

Am-Can's failure to operate its truck at a safe speed caused an accident resulting in property damage totaling $1,034,582.13. Am-Can is liable for the full amount of these damages. If payment of $1,034,582.13 has not been received within thirty days of the date of this letter, a lawsuit will be filed against Am-Can for the full amount of damages, plus interest and attorneys' fees.

Given the clear liability of Am-Can, it makes no sense to waste time and money on litigation. Moreover, if my clients are forced to resort to litigation, interest and attorneys' fees will only make the damages go higher. Let's get this case resolved.

I look forward to hearing from you.

Sincerely,

ZELLE, HOFMANN, VOELBEL, MASON & GETTE LLP

Kerry R. Brown
Brent W. Bull

2042049

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS,
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| AM-CAN TRANSPORT SERVICE,<br>INCORPORATED, | § §§ | |
| Plaintiff, | § §§ | |
| v. | § § | Civil Action No.  B-04-057 |
| KEMET CORPORATION; and<br>ALLIANZ GLOBAL RISKS US<br>INSURANCE COMPANY, | §§§§§ | |
| Defendants. | § § | |

## <u>AFFIDAVIT OF BRENT W. BULL</u>

STATE OF TEXAS    §
                     §
COUNTY OF DALLAS    §

BEFORE ME, the undersigned authority, on this day personally appeared Brent W. Bull, who is personally known by me, and after I administered an oath to him, upon his oath, he stated:

1.     My name is Brent W. Bull.  I am over the age of eighteen (18) and I am competent to make this Affidavit.  The facts stated in this Affidavit are within my personal knowledge and are true and correct.

2.     I am an associate of the law firm of Zelle, Hofmann, Voelbel, Mason & Gette, L.L.P.  Our firm represents Kemet Electronics Corporation and Allianz Global Risks US Insurance Company in their dispute with Am-Can Transport Service, Incorporated, arising out of Am-Can's failure to deliver the property it received from Kemet on April 10, 2003.

3.     Attached as Exhibit "A" is a true and correct copy of the February 4, 2004 letter sent to Charles Sweetman and Alan Rauch.

**AFFIDAVIT OF BRENT W. BULL**               **Page 1**

4.    I had several telephone and written communications with Mr. Charles Sweetman, counsel for Am-Can in attempts to resolve this dispute without litigation.  The communications included the following:

a.    On February 9, 2004, I spoke with Charles Sweetman for the first time.  In our conversation, he alleged Kemet had not been cooperative in producing the documents and evidence needed to verify the amount of Kemet's damages from the accident.  I assured him that I would make certain that Am-Can and its insurer, RLI Transportation Insurance Company ("RLI"), would get the information they needed.  I requested a list of items his clients needed to establish the amount of the damages suffered by Kemet.

b.    On February 13, 2004, I spoke with Charles Sweetman again and was told RLI would be providing a list of information it needed to complete its investigation.  Charles Sweetman told me to call back if I did not receive the list by February 23 or 24, 2004.

c.    Attached as Exhibit "B" is a true and correct copy of a February 17, 2004 letter I sent to Charles Sweetman

d.    During the last week in February, I spoke once again to Charles Sweetman to find out why I had not received any requests for information.  Charles Sweetman informed me that RLI had decided to take the file back from him, but that he would tell RLI's adjuster I wanted to speak with him and have the adjuster contact me.

**AFFIDAVIT OF BRENT W. BULL**                                                    **Page 2**

e.    Attached as Exhibit "C" is a true and correct copy of a March 31, 2004 letter I sent to Charles Sweetman concerning an earlier telephone conversation. I referred to his statements that he was no longer handling this matter for RLI Transportation Insurance Company and requested permission to contact RLI's adjuster directly to resolve this matter.

**FURTHER**, Affiant sayeth not.

_Brent W Bull_
BRENT W. BULL

SUBSCRIBED AND SWORN TO BEFORE ME this _16th_ day of April, 2004, to certify which witness my hand and seal of office.

_Kathy Jones_
Notary Public, State of Texas

[SEAL]



KATHY JONES
MY COMMISSION EXPIRES
June 06, 2006

**AFFIDAVIT OF BRENT W. BULL**                              **Page 3**

# ZELLE, HOFMANN, VOELBEL, MASON & GETTE

### REGISTERED LIMITED LIABILITY PARTNERSHIP

| | | |
|---|---|---|
| BOSTON | 1201 MAIN STREET | Kerry K. Brown |
| DALLAS | SUITE 3000 | kbrown@zelle.com |
| LOS ANGELES | DALLAS, TEXAS 75202 | (214) 749-4213 |
| MINNEAPOLIS | 214-742-3000 TELEPHONE | |
| SAN FRANCISCO | 214-760-8994 FACSIMILE | |
| WASHINGTON, D.C. | www.zelle.com | |
| BEIJING* | | |
| SHANGHAI* | | |
| *In association with ZY & Partners | | |

February 4, 2004

Charles Sweetman
SWEETMAN, SKAGGS &
  LAWLER, L.L.P.
855 East Harrison
Brownsville, TX 78520

**VIA TELECOPY (956) 541-2117 AND
FIRST CLASS U.S. REGULAR MAIL**

Alan W. Rauch
Senior Claims Examiner
**RLI TRANSPORTATION**
2970 Clairmont Road
Suite 1000
Atlanta, GA 30329

**VIA TELECOPY (404) 315-6558 AND
FIRST CLASS U.S. REGULAR MAIL**

     Re:    Am-Can Loss on April 11, 2003
             RLI Claim No.: 00156857
             Our File No.: 2-406-0059

Gentlemen:

     We represent Kemet Corporation ("Kemet") and Kemet's subrogated insurance carrier, Allianz Global Risks US Insurance Company ("Allianz Global Risks"), in connection with an accident that occurred outside of Kingsville, Texas on April 11, 2003. Please direct all future communications regarding this matter to this law firm.

## THE ACCIDENT

     Am-Can hauls capacitors and other products for Kemet by truck from South Carolina to Kemet's facility in Brownsville, Texas. During a rainstorm on April 11, 2003, an Am-Can truck driven by James W. Key lost control just outside of Kingsville, Texas. The Texas Department of Public Safety ("Texas DPS") cited Am-Can's driver for driving at an unsafe speed. (See attached Exhibit "A"). The capacitors and other cargo belonging to Kemet were ejected from the trailer and scattered across the highway and median. Kemet salvaged what it could. The rest had to be scrapped. Damages total $1,034,582.13.

February 4, 2004
Page 2

---

## LIABILITY AND DAMAGES

Am-Can took possession of Kemet's cargo (see attached "Exhibit B") in Simpsonville, South Carolina on April 10, 2003, and had a duty to deliver the cargo in good condition to Brownsville, Texas. Due to the negligence of Am-Can's driver, Kemet's property was damaged. The $1,034,582.13 damage figure represents the damages after applying all credits for the cargo Kemet was able to salvage. (See attached Exhibit "C").

## CONCLUSION AND DEMAND

Am-Can's failure to operate its truck at a safe speed caused an accident resulting in property damage totaling $1,034,582.13. Am-Can is liable for the full amount of these damages. If payment of $1,034,582.13 has not been received within thirty days of the date of this letter, a lawsuit will be filed against Am-Can for the full amount of damages, plus interest and attorneys' fees.

Given the clear liability of Am-Can, it makes no sense to waste time and money on litigation. Moreover, if my clients are forced to resort to litigation, interest and attorneys' fees will only make the damages go higher. Let's get this case resolved.

I look forward to hearing from you.

Sincerely,

ZELLE, HOFMANN, VOELBEL, MASON & GETTE LLP

Kerry K. Brown
Brent W. Bull

2042049

APPENDIX P. 7

# ZELLE, HOFMANN, VOELBEL, MASON & GETTE
### REGISTERED LIMITED LIABILITY PARTNERSHIP

BOSTON
DALLAS
LOS ANGELES
MINNEAPOLIS
SAN FRANCISCO
WASHINGTON, D.C.
BEIJING*
SHANGHAI*
*in association with ZY & Partners

1201 MAIN STREET
SUITE 3000
DALLAS, TEXAS 75202
214-742-3000 TELEPHONE
214-760-8994 FACSIMILE
www.zelle.com

Brent W. Bull
bbull@zelle.com
(214) 749-4249

February 17, 2004

Charles Sweetman
**SWEETMAN, SKAGGS &**
**LAWLER, L.L.P.**
855 East Harrison
Brownsville, TX 78520

**VIA TELECOPY (956) 541-2117 AND**
**FIRST CLASS U.S. REGULAR MAIL**

Re:    Am-Can/Kemet Cargo Loss on April 11, 2003
RLI Claim No.: 00156857
Our File No.: 2-406-0059

Dear Mr. Sweetman:

After some thought about the issues you raised in your telephone call last week, I have a recommendation that may help to more quickly and efficiently resolve this matter.

To get the ball rolling, I am offering to meet with you and your client at both the Brownsville facility where some of the damaged items are stored and at the Simpsonville, South Carolina facility where the trailer was loaded at your earliest convenience. I will make sure that the documents you request are available, the damaged cargo in Kemet's possession is available for inspection, and someone from Kemet will be there who has knowledge about this matter.

Please contact me with the earliest date you and your client will be available to visit the sites. I am certain we will be able to resolve this quickly and save both of our clients unnecessary costs and attorneys' fees.

I look forward to working with you on this matter. Please contact me if you have any questions.

Sincerely,

ZELLE, HOFMANN, VOELBEL, MASON & GETTE LLP

Brent W. Bull

2042544v1

APPENDIX P. 8

# ZELLE, HOFMANN, VOELBEL, MASON & GETTE
### REGISTERED LIMITED LIABILITY PARTNERSHIP

BOSTON
DALLAS
LOS ANGELES
MINNEAPOLIS
SAN FRANCISCO
WASHINGTON, D.C.
BEIJING*
SHANGHAI*
*In association with ZY & Partners

1201 MAIN STREET
SUITE 3000
DALLAS, TEXAS 75202
214-742-3000 TELEPHONE
214-760-8994 FACSIMILE
www.zelle.com

Brent W. Bull
bbull@zelle.com
(214) 749-4249

March 31, 2004

Charles Sweetman
SWEETMAN, SKAGGS &
    LAWLER, L.L.P.
855 East Harrison
Brownsville, TX  78520

**VIA TELECOPY (956) 541-2117**

Re:    Am-Can/Kemet Cargo Loss on April 11, 2003
       RLI Claim No.: 00156857
       Our File No.: 2-406-0059

Dear Mr. Sweetman:

During our recent telephone conversation you informed me you were no longer handling this matter for RLI Transportation Insurance Company and that RLI would contact us. I have yet to be contacted by RLI or its in-house counsel. In the interests of resolving this matter as quickly as possible, I request your permission to contact RLI's adjuster, Alan Rauch, directly. Please let me know if I have your permission.

Please contact me at your earliest convenience. Thank you for your assistance in this matter.

Sincerely,

ZELLE, HOFMANN, VOELBEL, MASON & GETTE LLP

Brent W. Bull

BWB/mc

2043518v1

APPENDIX P. 9

# ZELLE, HOFMANN, VOELBEL, MASON & GETTE
### REGISTERED LIMITED LIABILITY PARTNERSHIP

BOSTON
DALLAS
LOS ANGELES
MINNEAPOLIS
SAN FRANCISCO
WASHINGTON, D.C.
BEIJING*
SHANGHAI*
*In association with ZY & Partners

1201 MAIN STREET
SUITE 3000
DALLAS, TEXAS 75202
214-742-3000  TELEPHONE
214-760-8994  FACSIMILE
www.zelle.com

Brent W. Bull
bbull@zelle.com
(214) 749-4249

February 17, 2004

Charles Sweetman
SWEETMAN, SKAGGS &
    LAWLER, L.L.P.
855 East Harrison
Brownsville, TX 78520

VIA TELECOPY (956) 541-2117 AND
FIRST CLASS U.S. REGULAR MAIL

 Re: Am-Can/Kemet Cargo Loss on April 11, 2003
   RLI Claim No.: 00156857
   Our File No.: 2-406-0059

Dear Mr. Sweetman:

  After some thought about the issues you raised in your telephone call last week, I have a recommendation that may help to more quickly and efficiently resolve this matter.

  To get the ball rolling, I am offering to meet with you and your client at both the Brownsville facility where some of the damaged items are stored and at the Simpsonville, South Carolina facility where the trailer was loaded at your earliest convenience. I will make sure that the documents you request are available, the damaged cargo in Kemet's possession is available for inspection, and someone from Kemet will be there who has knowledge about this matter.

  Please contact me with the earliest date you and your client will be available to visit the sites. I am certain we will be able to resolve this quickly and save both of our clients unnecessary costs and attorneys' fees.

  I look forward to working with you on this matter. Please contact me if you have any questions.

       Sincerely,

       ZELLE, HOFMANN, VOELBEL, MASON & GETTE LLP

       Brent W. Bull

2042544v1

APPENDIX P. 10

# ZELLE, HOFMANN, VOELBEL, MASON & GETTE
### REGISTERED LIMITED LIABILITY PARTNERSHIP

BOSTON
DALLAS
LOS ANGELES
MINNEAPOLIS
SAN FRANCISCO
WASHINGTON, D.C.
BEIJING*
SHANGHAI*
*In association with ZY & Partners

1201 MAIN STREET
SUITE 3000
DALLAS, TEXAS 75202
214-742-3000 TELEPHONE
214-760-8994 FACSIMILE
www.zelle.com

Brent W. Bull
bbull@zelle.com
(214) 749-4249

March 31, 2004

Charles Sweetman
**SWEETMAN, SKAGGS &**
   **LAWLER, L.L.P.**
855 East Harrison
Brownsville, TX 78520

<u>**VIA TELECOPY (956) 541-2117**</u>

Re:   Am-Can/Kemet Cargo Loss on April 11, 2003
      RLI Claim No.: 00156857
      Our File No.: 2-406-0059

Dear Mr. Sweetman:

During our recent telephone conversation you informed me you were no longer handling this matter for RLI Transportation Insurance Company and that RLI would contact us. I have yet to be contacted by RLI or its in-house counsel. In the interests of resolving this matter as quickly as possible, I request your permission to contact RLI's adjuster, Alan Rauch, directly. Please let me know if I have your permission.

Please contact me at your earliest convenience. Thank you for your assistance in this matter.

Sincerely,

**ZELLE, HOFMANN, VOELBEL, MASON & GETTE LLP**

Brent W. Bull

BWB/mc

2043518v1

Westlaw.

1999 WL 68651
1999 Copr.L.Dec. P 27,881
(Cite as: 1999 WL 68651 (N.D.Tex.))
< KeyCite Citations >

**Page 1**

United States District Court, N.D. Texas,
Dallas Division.

**PAJ, Inc. d/b/a/ Prime Art & Jewel,
Plaintiff,
v.
YURMAN DESIGN, INC., Defendant.**

**No. Civ.A.3:98-CV-2847-P.**

Feb. 9, 1999.

**MEMORANDUM OPINION AND ORDER**

SOLIS, J.

*1 Presently before the Court is Defendant's
Motion to Dismiss the Complaint or, in the
Alternative, to Transfer or Stay the Action,
filed on December 21, 1998. Plaintiff filed a
Response on January 11, 1999 and Defendant
filed a Reply on January 29, 1999. For the
reasons stated below, Defendant's Motion to
Dismiss the Complaint is GRANTED. [FN1]

> FN1. Because the Court is dismissing PAJ's
> complaint, Plaintiff's Emergency Motion to Enjoin
> Prosecution of Second Filed Action, filed on January
> 25, 1999 is MOOT.

**BACKGROUND**

Plaintiff PAJ, Inc. ("Plaintiff" or "PAJ"), a
Texas corporation with its principal place of
business in Dallas, Texas, has designed
jewelry since 1984. Plaintiff's jewelry, which
it markets and distributes to retail stores,
includes sterling silver and 14K gold
bracelets, necklaces, and earrings. Pl.'s Resp.
at 1. Defendant Yurman Design, Inc.
("Yurman" or "Defendant"), a New York
corporation with its principal place of business
in New York, New York, has designed fine
jewelry with a cable design since the early
1980s. Defendant's jewelry is known for its
distinctive cable design, exceptional quality,
precious stones, unique materials and superior
craftsmanship. Def.'s Mot. at 4- 6.

On November 23, 1998, Plaintiff received a
letter from Defendant regarding unspecified
pieces of jewelry produced and sold by
Plaintiff, and advertised in its catalog entitled
"Legends of Athena Greek Goddess of
Wisdom." *See* Pl.'s Resp., Ex. A. In the letter,
Defendant claimed that Plaintiff was directly
copying designs created by Yurman.
Specifically, Defendant alleged that Plaintiff's
catalog included "numerous pieces which
infringe jewelry designs for which David
Yurman has copyright protection ... violates
David Yurman's trademark and trade dress
rights ... constitutes unfair competition,
trading off the goodwill of Yurman Design,
Inc, copyright infringement and dilution of
Yurman Design Inc.'s rights." Pl.'s Resp., Ex.
A at 1. Yurman then demanded that PAJ
cease and desist the production and sale of its
jewelry product that "copy and incorporate the
designs created by David Yurman" because it
confuses the public. *Id.* at 2. Yurman also
stated that if PAJ met its specific demands it
would not bring a legal action, however, if
PAJ did not inform Yurman of it intentions by
the end of business on December 4, 1998,
Yurman would pursue litigation. *Id.*

Plaintiff did not respond to Defendant's cease
and desist letter. Instead, on December 3,
1998, Plaintiff brought a declaratory judgment
action in this Court. In the present suit,
Plaintiff requests a declaration that its
production and sale of jewelry shown in the
"Legends of Athena Greek Goddess of
Wisdom" catalog do not infringe any patents,
copyrights, trademarks, or trade dress of
Yurman or constitute unfair competition,
trading off of goodwill, or dilution of Yurman's
rights.

On December 8, 1998, after receiving a
courtesy copy of Plaintiff's complaint in the
present action, Yurman filed an action in the
United States District Court for the Southern
District of New York against PAJ alleging
claims of copyright infringement, unfair
competition, deceptive trade practices,

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

declaratory plaintiff to gain precedence in time or to change forums exist; (5) whether the federal court is a convenient forum for the parties and witnesses; and (6) whether retaining the lawsuit ... would serve the purposes of judicial economy." *Travelers Ins. Co., v. Louisiana Farm Bureau Federation,* 996 F.2d 774, 778 (5th Cir.1993) (citations omitted). Reviewing these criteria, it is clear to the Court that this matter must be dismissed without prejudice.

**\*3** With respect to the first factor, as mentioned *supra,* there is an identical suit which was filed in the Southern District of New York. In that case, Yurman is sung PAJ for copyright infringement, unfair competition, deceptive trade practices, misappropriation, and unjust enrichment. In essence, that case encompasses substantially identical issues as those before this Court. [FN2] Therefore, factor one points toward declining to exercise jurisdiction.

> FN2. The only difference between the suits is the party bringing them and the presence of a patent infringement claim in PAJ's suit. These differences are not enough to eliminate the concerns about undermining comity between the courts. *See Simone,* 1996 WL 5708, at *5.

Concerning the second, third, and fourth factors, from the facts before the Court, it is clear that the instant suit was filed in anticipation of a suit being filed by Yurman. Yurman is the party claiming that PAJ has copied its jewelry design. Yurman informed PAJ through a cease and desist letter, dated November 23, 1998, that it believed PAJ had infringed some of its designs and gave PAJ until the end of business on December 4, 1998 to respond to its claim. Instead of complying with Yurman's request and responding to the letter, PAJ filed the instant lawsuit.

Such motives have been found to constitute a "rush to the courthouse" and grounds for the dismissal of a declaratory judgment suit. *See British Borneo Exploration, Inc., et al.,* 1998 WL 814625, at* 8; *see also Mission Ins. Co. v. Puritan Fashions Corp.,* 706 F.2d 599, 602 (5th Cir.1983); *Excel Music, Inc. v. Simone,* No. 95-

3626, 1996 WL 5708, at * 5-6 (E.D.La. Jan. 5, 1996). Courts have found that the party filing suit in anticipation of a suit in another forum should not be rewarded for what amounts to forum shopping. *Simone,* 1996 WL 5708, at *6. "Put another way, '[t]he Court cannot allow a party to secure a more favorable forum by filing an action for declaratory judgment when it has notice that the other party intends to file suit involving the same issues in a different forum.' " *British Borneo Exploration, Inc., et al.,* 1998 WL 814625, at *8 (citing 909 *Corp. v. Village of Bolingbrook Police Pension Fund,* 741 F.Supp. 1290 (S.D.Tex.1990)). Further, anticipatory suits deprive a potential plaintiff of his or her choice of forum. *British Borneo Exploration, Inc., et al.,* 1998 WL 814625, at *9.

In the present suit, application of the "first-to-file" rule would penalize Yurman who made a good faith effort to resolve the matter without the assistance of the Courts through its cease and desist letter. In the letter, Yurman indicated that it would not file suit unless it had not heard from PAJ by December 4, 1998. *See* Pl.'s Resp., Ex. A. Therefore, the timing sequence suggests that because PAJ knew it was under the impending threat of litigation it filed a declaratory judgment action one day prior to the expiration of Yurman's imposed deadline. PAJ knew that Yurman would file an action in New York if it did not manage to file the instant action first.

This is a classic example of a race to the courthouse. The "misuse of the Declaratory Judgment Act to gain a procedural advantage and preempt the forum choice of the plaintiff in the coercive action militates in favor of dismissing the declaratory judgment action." *Great American Ins. Co. v. Houston General Ins. Co.,* 735 F.Supp. 581, 586 (S.D.N.Y.1990). PAJ cannot be permitted to transform "a doctrine that was offered as a shield into a sword." *Serco Services Co., L.P. v. Kelley Co., Inc.,* No.3:93-CV-1885-R, 1994 WL 715913, at * 2 (N.D.Tex. May 24, 1994). "A plaintiff's choice of forum should only be given protection where the plaintiff before the court is the proper plaintiff--not a manufactured plaintiff through the misapplication of a declaratory

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works



1999 WL 68651
(Cite as: 1999 WL 68651, *3 (N.D.Tex.))

Page    4

judgment." *Id.* Therefore, the Court finds that by filing the instant action, PAJ was attempting to short-circuit the suit which Yurman eventually brought in New York on December 8, 1998.

*4 Finally, as to the fifth and sixth factors, the Court finds that the burden of travel would weigh equally heavy on either side. Each side avers that its witnesses and documents are located in the state where it has its principal place of business. In addition, each side asserts that the other side has more of a national presence. All things being equal, the Court finds that PAJ, the alleged infringer, should not be allowed to alleviate its litigation expense by filing an anticipatory declaratory judgment action in Texas. *See Metro Optics, Inc. v. Contex, Inc.*, No.3:95-CV-2157-T, 1996 WL 302697, at * 2 (N.D.Tex. March 14, 1996); *Serco Services Co., L.P.*, 1994 WL 715913, at * 3. The Court, therefore, declines to entertain this declaratory judgment action.

## CONCLUSION

Having considered the law and facts surrounding the above-captioned matter, the Court, in the exercise of its discretion, finds that Defendant's Motion to Dismiss is GRANTED. [FN3] The Court finds that the pending action in the United States District Court for the Southern District of New York will provide Plaintiff with every opportunity to protect the rights that it sought adjudicated in the present action. Accordingly, Plaintiff's claims are DISMISSED without prejudice to their being pursued in the parallel action in the United States District Court for the Southern District of New York or, in the alternative, without prejudice to their being refiled here should the parallel Southern District of New York action, for any reason, fail to resolve the matter in controversy.

> FN3. As the Court has dismissed Plaintiff's declaratory judgment action, the Court need not reach Defendant's alternative motion to transfer this action to New York or stay the action.

Further, in an effort to protect the rights of both parties, Defendant is instructed to inform the United States District Court for the Southern District of New York of this Court's opinion in a timely fashion.

**So ordered.**

1999 WL 68651, 1999 WL 68651 (N.D.Tex.), 1999 Copr.L.Dec. P 27,881

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works



ORIGINAL FILED

APR 1 6 2004

LARRY W. PROPES, CLERK
U. S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
~~GREENVILLE~~ Anderson DIVISION

| | |
|---|---|
| Kemet Electronics Corporation, | |
| Plaintiff, | Case No.: __8 ː 0 4-1 2 2 1-1 3__ |
| vs. | |
| Am-Can Transport Service, Incorporated, | **COMPLAINT**<br>**(JURY DEMAND)** |
| Defendant. | |

Plaintiff, Kemet Electronics Corporation ("Kemet"), complains of Defendant, Am-Can Transport Service, Incorporated ("Am-Can"), as follows:

## I.
## PARTIES

1.    Plaintiff, Kemet, is a corporation organized and existing under the laws of the state of Delaware. Kemet has its principal place of business in Simpsonville, South Carolina.

2.    Defendant, Am-Can, is a South Carolina corporation with its principal place of business in Anderson, South Carolina. Am-Can may be served with process by serving its registered agent for service of process, Swain N. Thompson, at 330 Web Road, Williamston, South Carolina 29621.

## II.
## JURISDICTION AND VENUE

3.    This Court has original jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1337 because the matter in controversy arises out of the loss and damage to property in interstate commerce under 49 U.S.C. § 14706 and the amount in controversy exceeds $10,000, exclusive of interests and costs.

1

4.      Venue is proper in this district pursuant to 49 U.S.C. § 14706(d)(1) because Am-Can was the delivering carrier for the shipment of property made the basis of this lawsuit and Am-Can operates through the District of South Carolina, Greenville Division.

## III.
## FACTUAL BACKGROUND

5.      Am-Can is a motor carrier authorized by the United States Department of Transportation to transport property in Interstate Commerce.

6.      On April 10, 2003, Am-Can received a shipment of property belonging to Kemet at Kemet's Simpsonville, South Carolina warehouse for transportation to Kemet's Brownsville, Texas facility.  Kemet delivered the property to Am-Can in good condition.

7.      At the time Am-Can received the property from Kemet, Am-Can signed a bill of lading for the shipment.

8.      On April 11, 2003, Am-Can's driver lost control of the truck carrying Kemet's property near Kingsville, Texas, seriously damaging the property.

9.      The majority of Kemet's property was never delivered to Kemet's Brownsville, Texas facility and the property that was delivered was damaged.  Thus, Am-Can failed to deliver Kemet's property in the same condition in which Am-Can received the property.

10.     As a result of Am-Can's actions, Kemet suffered damages in the amount of $1,034,582.13.

## IV.

## FOR THE COURT'S EYES ONLY

11.     Allianz Global Risks US Insurance Company ("Allianz Global Risks") insured Kemet under a property insurance policy.  Allianz Global Risks paid damages to Kemet for the

2

loss of Kemet's property caused by Am-Can. As a result, Allianz Global Risks is subrogated to Kemet's claims against Am-Can for the amount Allianz Global Risks paid to Kemet.

## V.
## CAUSE OF ACTION:
## AM-CAN IS STRICTLY LIABLE UNDER THE CARMACK AMENDMENT

12.     Kemet fully incorporates by reference Paragraphs 1 through 11 above.

13.     Kemet provided property to Am-Can for transport to Kemet's Brownsville, Texas facility. Am-Can received the property in good order and condition, but failed to deliver the property to Kemet's Brownsville, Texas facility in the same condition.

14.     Am-Can is strictly liable under the Carmack Amendment, 28 U.S.C. § 14706, to Kemet for the damages to Kemet's property as a result of Am-Can's actions. The damage to Kemet's property was proximately caused by Am-Can's actions.

15.     As a result of the conduct of Am-Can described above, Kemet suffered damages in the amount of $1,034,582.13, and these damages are within the jurisdictional limits of this Court.

## VI.
## JURY DEMAND

16.     Kemet requests a jury trial on all triable issues in accordance with Rule 38 of the Federal Rules of Civil Procedure.

3

## VII.
## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays for judgment against Am-Can as follows:

1.    Actual damages in the amount of $1,034,582.13;

2.    Pre- and postjudgment interest at the highest lawful rate;

3.    Costs of court; and

4.    Such other and further relief as the Court deems just and equitable.

Respectfully submitted,

_____
Mark W. Bakker (Bar No. 6885)
Carl F. Muller (Bar. No. 3602)
WYCHE, BURGESS, FREEMAN & PARHAM, P.A.
44 E. Camperdown Way
Post Office Box 728
Greenville, SC  29602-0728
Direct Dial: 864-242-8299
Telephone:  864-242-8200
Telecopier:  864-235-8900
E-Mail:  mbakker@wyche.com
Attorneys for Plaintiff

OF COUNSEL:
Kerry K. Brown
Brett A. Wallingford
Brent W. Bull
ZELLE, HOFMANN, VOELBEL, MASON & GETTE,
L.L.P
1201 Main Street, Suite 3000
Dallas, TX 75202

Date:  April 16, 2004
Greenville, South Carolina

4

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS,
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| AM-CAN TRANSPORT SERVICE,<br>INCORPORATED,<br><br>    Plaintiff,<br><br>v.<br><br>KEMET CORPORATION; and<br>ALLIANZ GLOBAL RISKS US<br>INSURANCE COMPANY,<br><br>    Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No.  B-04-057 |

## AFFIDAVIT OF MICHAEL BOONE

| | |
|---|---|
| STATE OF SOUTH CAROLINA | § |
| | § |
| COUNTY OF GREENVILLE | § |

Before me on this day personally appeared Michael Boone, a person whose identity is known to me, and who testified as follows:

1.  My name is Michael Boone.  I am over twenty-one years of age, have not been convicted of a felony and am competent to make this affidavit.  The facts stated herein are based on my personal knowledge and are true and correct.

2.  I am the Treasurer and Director of Finance and Corporate Secretary for Kemet Electronics Corporation.  I reside in Greer, South Carolina.

3.  Kemet Electronics Corporation is a corporation organized under the laws of Delaware.  The principal place of business of Kemet Electronics Corporation is Simpsonville, County of Greenville, South Carolina and its principal office is located there.

AFFIDAVIT OF MICHAEL BOONE – PAGE 1

4.    Kemet Electronics Corporation has its corporate office in Simpsonville, County of

Greenville, South Carolina and maintains its corporate documents at this location.


Further affiant sayeth not.


                                        _Michael Boone_____
                                        MICHAEL BOONE



SWORN TO and SUBSCRIBED before me on April 16, 2004.




                                        _Rhonda L. Sargent_____
                                        Notary Public in and for the
                                        State of South Carolina

[SEAL]

04/05/2004  13:46    8642284161                KEMET                        PAGE  05/08

United States District Court
Southern District of Texas
FILED

MAR 3 0 2004

Michael N. Milby
Clerk of Court

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | |
|---|---|
| AM-CAN TRANSPORT SERVICE, INC.  §<br>§<br>Plaintiff,  §<br>§<br>VS.  §<br>§<br>KEMET CORPORTATION and  §<br>ALLIANZ GLOBAL RISKS US  §<br>INSURANCE COMPANY,  §<br>§<br>Defendants.  § | CIVIL ACTION NO. B-04-057 |

### PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, Am-Can Transport Service, Inc. ("Am-Can"), complaining of defendants, Kemet Corportation ("Kemet") and Allianz Global Risks US Insurance Company ("Allianz"), says as follows:

### PARTIES

1.1    Am-Can is a South Carolina corporation with a principal place of business in Anderson, South Carolina.

1.2    Kemet is a corporation with a principal place of business in Greenville, South Carolina.

1.3    Allianz is a corporation with a principal place of business in Burbank, California.

### JURISDICTION

2.1    This Court has jurisdiction of the subject matter of this action pursuant to 28 U.S.C. §1337 insofar as the matter in controversy arises out of loss and damage to goods in interstate commerce under 49 U.S.C. §14706.

2.2    The matter in controversy exceeds $10,000, exclusive of interests and costs.

APPENDIX P. 22

2.3     This Court has jurisdiction to render a declaratory judgment pursuant to 28

        U.S.C. §2201.

2.4     Venue is proper in this district under 28 U.S.C. §1391(b) insofar as the loss and

        damage to goods in interstate transportation occurred in this district.

## CAUSE OF ACTION

3.1     Am-Can is a motor carrier authorized by the United States Department of

        Transportation to transport goods in interstate commerce as a common carrier

        under docket number MC 140334.

3.2     On April 10, 2003, Am-Can received from Kemet at Simpsonville, South Carolina,

        a shipment of goods said to belong to Kemet for transportation to Kemet in

        Brownsville, Texas.

3.3     At the time of the receipt of the shipment, Am-Can issued a straight bill of lading

        to Kemet.

3.4     On April 11, 2003, the vehicle operated by Am-Can which was carrying the

        goods of Kemet pursuant to the bill of lading was involved in an accident near

        Kingsville, Texas, causing damage to the cargo.

3.5     Allianz claims to be the subrogated insurer of Kemet for the damage to the cargo.

3.6     Allianz and Kemet claim to have suffered a loss of $1,034,582 as a result of

        damage to the cargo caused in the accident on April 11, 2003.

3.7     Allianz, as the subrogated insurer of Kemet has demanded the sum of

        $1,034,582 for damage to the cargo caused in the accident of April 11, 2003.

3.8     The contract of carriage between Am-Can and Kemet, and applicable tariffs,

        rules, regulations and classifications require as a condition precedent to recovery

of damages for loss and damage to cargo in the course of transportation that a claim for loss or damage be presented to Am-Can in writing within nine months of the date of delivery.

3.9   A written claim which complies with the applicable tariffs, rules, regulations and classifications was not presented to Am-Can within nine months of the date of delivery of the cargo.

3.10   Am-Can is entitled to a declaration that Allianz and Kemet may not recover for any damages to the cargo by reason of the failure to present a proper written claim to Can-Am within nine months of the date of delivery of the cargo.

3.11   An actual controversy exists between the parties.

WHEREFORE, Am-Can respectfully requests judgment declaring that Allianz and Kemet may not recover damages from Am-Can for damage to Kemet's property which was caused by the accident of April 11, 2003, and for such other and further relief which the Court may deem just and proper.

Respectfully submitted,

SWEETMAN, SKAGGS & LAWLER, L.L.P.
855 East Harrison
Brownsville, Texas 78520
Telephone: (956) 544-4606
Fax:       (956) 544-0543

By:_____
CHARLES E. SWEETMAN
State Bar No. 19574500
Federal I.D. No. 4710

ATTORNEYS FOR DEFENDANT
AM-CAN TRANSPORT SERVICE, INC